UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFEREY D. H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:18-CV-00382-PPS-MGG |
| | ) |
| ANDREW SAUL, | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Jefferey D. H. ("Mr. H.") seeks judicial review of the Social Security Commissioner's decision denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II, as allowed under 42 U.S.C. § 405(g). On March 28, 2019, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons indicated below, the undersigned recommends remand of the Commissioner's decision.

**I.   OVERVIEW OF THE CASE**

Mr. H. alleges an onset of disability on September 15, 2014, based on a right knee and lumbar spine issues; chronic obstructive pulmonary disease; asthma; depression; and mood disorder. Mr. H. completed the seventh grade and worked for over thirty years in several industries, including construction and mining. [DE 12 at 65, 265].

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the Plaintiff by first name and last initial only.

Mr. H.'s application for DIB submitted on June 1, 2015, was denied initially and upon reconsideration. Following a hearing on June 7, 2017, the Administrative Law Judge ("ALJ") issued a decision on March 9, 2018, which affirmed the Social Security Administration's ("SSA") denial of benefits. The ALJ found that Mr. H. is unable to perform any past relevant work. [DE 12 at 28]. However, the ALJ found that Mr. H. has the residual functional capacity ("RFC") to perform light work as defined by the regulations with some limitations. [DE 12 at 22]. Based on the testimony of the vocational expert ("VE"), the ALJ found that Mr. H. has the ability to meet the requirements for employment as an office helper, router, and small parts assembler. [DE 12 at 29]. Based upon these findings, the ALJ denied Mr. H.'s claims for benefits.

## II.    DISABILITY STANDARD

In order to qualify for DIB, a claimant must be "disabled" under the Social Security Act ("Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is

2

capable of making an adjustment to other work. 20 C.F.R. § 404.1520; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III.    STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened when the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured

that the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must, at least, provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question under judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th. Cir. 2001).

**IV.   ANALYSIS**

In challenging the ALJ's decision, Mr. H. alleges three errors in the RFC determination. A claimant's RFC is the limit of activity in which he can engage in a work setting despite the physical and mental limitations that arise from his impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). Mr. H. alleges 1) that the ALJ failed to fully account for his mental and social limitations, especially his concentration, persistence, and pace ("CPP") limitations in the mental RFC; 2) that the ALJ did not include limitations arising from his knee and back impairments in the

4

physical RFC; 3) and that the ALJ improperly neglected Mr. H.'s strong work history in his subjective symptoms assessment.

### A. Mental RFC Arguments

#### 1. Relevant Background

As part of his Step Three listing analysis, the ALJ concluded that Mr. H. has moderate limitations in concentration, persistence, and pace. The ALJ asserted that Mr. H.'s daily activities, stress management, attentiveness, and conduct during the hearing supported his finding of moderate CPP limitations. [DE 12 at 21]. Subsequently, the ALJ defined Mr. H.'s RFC as being able to perform light work with the following mental and social limitations.[2]

> The claimant is limited to performing simple, routine and repetitive tasks. The claimant is limited to simple work-related decisions. The claimant is limited to frequent interaction with supervisors and coworkers. The claimant is limited to occasional interaction with the public. The claimant is limited to tolerating occasional changes in a routine work setting.

[DE 12 at 22]. The ALJ restated, verbatim, the mental and social limitations from the RFC in his hypothetical to the VE at the hearing.

Mr. H. argues that the ALJ's mental RFC determination is not supported by substantial evidence. Specifically, Mr. H. contends that the RFC, and identical hypothetical to the VE, do not include any CPP limitations, which contradicts the ALJ's finding of "moderate" CPP limitations. Mr. H. also argues that the ALJ did not consider the quality of Mr. H.'s social interactions with others when developing the mental RFC.

---

[2] The ALJ's RFC also included exertional and postural limitations that are not relevant here. [*See* DE 12 at 22].

5

**2.     Analysis**

**a.) CPP Limitations**

An ALJ must evaluate all relevant evidence when determining a claimant's RFC, including evidence of non-severe impairments. 20 C.F.R. § 404.1545(a). This evidence includes a claimant's deficiencies in concentration, persistence, or pace. *O'Connor–Spinner*, 627 F.3d at 619. A claimant's mental ability is relevant to the RFC analysis, because "[a] limited ability to carry out certain mental activities . . . may reduce your ability to do past work and other work." 20 C.F.R. § 404.1545(c).

The Seventh Circuit has provided that, "[a]s a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). While there is no "per se requirement" for an ALJ to use the specific terminology of "concentration, persistence, and pace" in a hypothetical, a court "will not assume that the VE is apprised of such limitations . . . ." *Id.* When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). In most cases, an ALJ "should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620–21.

The ALJ crafted an RFC—and identical hypothetical—limiting Mr. H. to "forming simple, routine, and repetitive tasks . . . simple work-related decisions . . . frequent interactions with supervisors and coworkers . . . occasional interaction with the public . . . [and] tolerating occasional changes in the routine work setting." [DE 12 at 22]. The Seventh Circuit has permitted "an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619. However, in order to determine whether an RFC excludes the tasks that someone with the claimant's limitations would be unable to perform, one must first know the claimant's limitations.

The ALJ neither explicitly defined Mr. H.'s specific CPP limitations, outlined the evidence such that any inference he may have made was clear, nor articulated a rationale connecting the evidence to his RFC determination. Instead, the ALJ relied on his recitation of conflicting evidence regarding Mr. H's limitations. Without any further explanation, this Court cannot trace the ALJ's logic from the conflicting evidence cited to the mental limitations included in the RFC. For instance, the ALJ noted that, while Mr. H. did not like to talk in public and became irritable in social situations, he had no problems conversing with family, friends, or supervisors. This conflicting evidence does not, by itself, produce a conclusion about the extent to which Mr. H. can socialize in a work environment and, thus, restrains this Court from adequately reviewing the RFC.

Furthermore, the Seventh Circuit has refused to acknowledge that generic limitations, such as those requiring "routine work," account for a claimant's moderate

7

CPP limitations. *See Moreno v. Berryhill,* 882 F.3d 722, 730 (7th Cir. 2018). Here, the ALJ used boilerplate language to limit Mr. H. to "simple, routine, and repetitive tasks . . . simple work-related decisions . . . [and] occasional changes in the routine work setting." [ DE 12 at 22]. While such generic language may be permissible in some situations, the ALJ has not created the necessary logical bridge to allow this Court to track the cited evidence to the RFC limitations and, therefore, ensure that these largely generic limitations fully account for Mr. H.'s CPP limitations in the mental RFC. *Yurt,* 758 F.3d at 858–59.

### b.) Quality of Social Interactions

The ALJ also failed to provide a logical bridge from the evidence of Mr. H.'s social interactions to the limitations included in the mental RFC. The ALJ demonstrated that he was aware of the quality of Mr. H.'s interactions by, for example, referencing Mr. H.'s antisocial behaviors and that Mr. H. did not "like to be around people, particularly as he is in pain." [DE 12 at 21]. The ALJ also noted Mr. H.'s rude, aggressive, and offensive behavior during treatment. On the other hand, the ALJ noted that Mr. H. socializes well with family, friends, neighbors, and authority figures and that he has never lost a job due to antisocial issues. [DE 12 at 21]. He also considered Mr. H.'s own testimony about his regular socialization and improved condition on medication. [DE 12 at 21]. In the face of this conflicting evidence, the ALJ limited Mr. H. to "frequent interaction with supervisors and coworkers" and "occasional interaction with the public." [DE 12 at 22].

The ALJ has an obligation to explain or, at least, present enough reasoning to show the logic with which he assessed conflicting evidence and determined the RFC. The ALJ, again, neither explicitly defined Mr. H.'s specific social limitations, outlined the evidence such that any inference he may have made was clear, nor articulated a rationale connecting the evidence to his RFC determination. He merely listed conflicting evidence and, on that basis, concluded that Mr. H. has a moderate limitation in interacting with others. Moreover, the RFC contains only temporal limitations—and no qualitative limitations—on Mr. H.'s interactions. The Commissioner has acknowledged that the ALJ was aware of the qualitative deficiencies in Mr. H.'s interactions, but the ALJ provided no basis from which this Court can infer that those deficiencies are represented in the RFC. Therefore, the ALJ has failed to present a logical bridge connecting his discussion of the evidence to the limitations included in the RFC.

### B.  Physical RFC Argument

In the RFC, the ALJ listed Mr. H.'s physical limitations, stating,

> The claimant can stand and/or walk a total of 4 hours in an 8-hour workday. The claimant can occasionally reach overhead bilaterally. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle. The claimant can tolerate occasional exposure to dust, odors, fumes and other pulmonary irritants in the work environment.

[DE 12 at 22]. Mr. H. argues that the ALJ's physical RFC is not supported with substantial evidence. In particular, Mr. H. challenges the ALJ's support for finding that

9

he can stand or walk for at least four hours during an eight-hour workday given his knee and back impairments.

With respect to Mr. H.'s right knee limitations, the ALJ cited x-rays that showed "only minimal early degenerative change along the medial tibial plateau." [DE 12 at 24]. Moreover, the ALJ cited a physical examination conducted in March 2015, in which Mr. H. exhibited pain but retained normal reflexes and coordination, strength and tone, and range of motion, as well as no instability. [DE 12 at 24]. The ALJ further referenced an examination during October 2015, during which Mr. H. had a limited range of motion, reduced strength in his knee, and a limp; however, he also ambulated without an assistive device, and the treatment provider did not think one was needed. [DE 12 at 24]. The ALJ also noted that, in August 2016, Mr. H. limped and had difficulty fully extending his right knee, but that he was able to ambulate without a walker or cane. [DE 12 at 24]. Furthermore, the ALJ found that Mr. H.'s treatment was primarily conservative until March 2017, around which time Mr. H. underwent surgery. Afterwards, the treatment provider stated that his knee was improving. [DE 12 at 24].

With respect to Mr. H.'s back impairments, the ALJ acknowledged that x-rays and MRIs demonstrated "thoracic kyphosis, thoracic spondylosis and degenerative changes of the lumbar spine." [DE 12 at 24]. In November 2015, a neurologist diagnosed Mr. H. with Scheuermann's disease. [DE 12 at 24]. The ALJ, however, claimed that Mr. H.'s testimony about the extent of his back pain was not entirely supported by the evidence. He cited several examples to support his assertion, including diagnostic testing that failed to support the presence of worsening symptoms over time and

conservative treatments prescribed to Mr. H. by medical professionals. [DE 12 at 24]. Moreover, the ALJ noted that Mr. H. did not comply with recommendations for physical therapy by multiple treatment providers. [DE 12 at 24].

Ultimately, the ALJ presents sufficient reasoning, on the basis of substantial evidence, to support the physical RFC limitations. For instance, after "taking into account the results of diagnostic testing and physical examinations," the ALJ concluded that the record shows primarily conservative treatment for Mr. H.'s right knee. [DE 12 at 24]. Then, he proceeded to substantiate that conclusion with specific examples from the record, such as prescription treatments used in lieu of surgery. [DE 12 at 24]. Thus, rather than simply reciting conflicting evidence, the ALJ clearly presents the reasons for his conclusions and proceeds to justify those conclusions with substantial evidence.

Later, he accounted for Mr. H.'s spine disorder and explicitly stated that the RFC accounts for this limitation by including limitations on vibration; he stated that the RFC contains reaching and vibration limitations that account for Mr. H.'s degenerative disc disease; and he stated that the RFC includes limitations that account for Mr. H.'s asthma and obstructive pulmonary disease. [DE 12 at 24-26]. Furthermore, the ALJ shows the particular ways in which Mr. H.'s testimony conflicts with objective medical evidence. For instance, the ALJ cites to examinations that failed to show that Mr. H. was restricted to less than four hours of standing a day, explicitly finding that the evidence from Mr. H.'s lumbar radiculopathy only justifies the standing and walking limitations articulated in the RFC. [DE 12 at 26]. Thus, this Court can plainly see the basis for his conclusion. Further showing that he adequately assessed evidence on both sides, the

ALJ dismissed the opinions of two state agency medical consultants who opined that Mr. H. could stand for longer than four hours a day [DE 12 at 27-28].

Therefore, this Court can clearly follow the ALJ's logic from the evidence to his intermediate conclusions to his eventual RFC limitations. The ALJ has sufficiently articulated his assessment on the basis of substantial evidence and provided a clear path of reasoning. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

### C. Subjective Symptoms[3]

Mr. H. asserts that his strong work history, totaling around thirty-four years, was not considered by the ALJ during the subjective symptom analysis and that, therefore, the ALJ committed error. [DE 12 at 265].

While a claimant's "consistent work history weighs in favor of a positive credibility finding, it is still just 'one factor among many, and it is not dispositive.'" *Summers v. Berryhill*, 864 F.3d at 529 (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). This Court will not overturn an ALJ's subjective symptoms determination unless it is "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). "An ALJ is not statutorily required to consider a claimant's work history, but "a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark v. Colvin*, 813 F.3d 684, 688 (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)).

---

[3] Per SSR 16-3p, the term "credibility" has been removed from sub-regulatory policies, and the term "subjective symptoms" is used to clarify that the subjective symptom evaluation is not an examination of an individual's character. Adjudicators will apply this ruling for determinations and decisions made on or after March 28, 2016.

While the ALJ did not explicitly consider Mr. H.'s work history, he nonetheless thoroughly considered the medical and testimonial evidence, including Mr. H.'s allegations, and was not "patently wrong" in his decision. In his subjective symptom analysis, the ALJ acknowledged Mr. H.'s subjective complaints about the intensity, persistence, and limiting effects of his symptoms to determine the extent to which they affect his functional limitations. More specifically, the ALJ explicitly referenced Mr. H.'s assertions about his daily pain in his legs, knees, back, and neck, as well as the breathing treatments meant to alleviate his chronic obstructive pulmonary disease. [DE 12 at 23]. Afterwards, the ALJ stated that "these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [DE 12 at 23]. The ALJ cited the evidence that he concluded was inconsistent with Mr. H.'s subjective complaints, including x-rays, diagnostic testing, physical examinations, and Mr. H.'s own reported improvement. [DE 12 at 23]. He did not mention Mr. H.'s work history.

Since the ALJ extensively considered Mr. H.'s allegations, medical evidence, and testimony, the subjective symptoms analysis was not "patently wrong," even without a discussion of Mr. H.'s work history. [DE 12 at 23—28]. An ALJ does not need to explicitly consider every piece of evidence, including a claimant's work history. *See Diaz v. Chater*, 55 F.3d 300 (7th Cir. 1995). Nevertheless, given his many years of hard labor, the Court urges the ALJ on remand to ensure a careful consideration of Mr. H.'s work history.

13

## V. CONCLUSION

As discussed above, the ALJ did not support his mental RFC determination with substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Mr. H.'s appeal of the Social Security Administration's decision denying his application for Disability Insurance Benefits be **GRANTED** and that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings consistent with this report and recommendation.

>**NOTICE IS HEREBY GIVEN** that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). **FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**.

**SO ORDERED** this 28th day of January 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
